UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT CAMACHO, JR., | : | CASE **NO. 1:14-CV-01428** |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| R.J. DEAN, *et al.,* | : | |
| | : | |
| Defendants | : | |

<u>**ORDER**</u>
July 22, 2015

**I. Introduction.**

The plaintiff, Roberto Camacho, Jr., through counsel, filed a complaint complaining about events and conditions at the State Correctional Institution at Huntingdon (SCI-Huntingdon).   Camacho later filed a motion for a preliminary injunction seeking confidential contact visits with his attorney.   By a separate report and recommendation, we recommend that the motion for a preliminary injunction be denied.   In this Order we address the following motions filed by Camacho: (1) a motion in limine for spoliation sanctions; (2) a motion for Rule 11 sanctions; (3) a motion for reconsideration of an order regarding Camacho's change

of address; (4) counsel's motion to withdraw as counsel; and (5) counsel's second motion to withdraw as counsel.

## II. Background and Procedural History.

Camacho names the following individuals as defendants: (1) R.L. Dean, a kitchen steward; (2) Mr. Hoover, a kitchen steward; (3) Mr. Parks, a kitchen supervisor; (4) Mr. Cook, a unit manager; (5) Paula C. Price, a corrections health care administrator; and (6) Tabb Bickell, the former superintendent at SCI-Huntingdon.   Camacho complains that defendant Dean injured Camacho's arm, that he was denied medical treatment for his injured arm, and that after he complained about Dean's action, he was retaliated against.   The complaint contains four counts.   Count 1 is an Eighth Amendment claim of excessive force against defendant Dean.   Count 2 is an Eighth Amendment medical claim against defendants Parks, Hoover, and Price.   Count 3 is a First Amendment retaliation claim against defendant Dean.   And Count 4 contains failure to supervise claims under the First and Eighth Amendments against defendants Parks, Cook, and Bickell.   Camacho seeks compensatory and punitive damages as well as declaratory relief and injunctive relief in the form of an order for adequate medical care.

On October 23, 2014, Camacho filed a motion for a preliminary injunction asking the Court to enjoin the Superintendent at SCI-Huntingdon from refusing to permit his counsel to confer with him in a space suitable for confidential contact visits.   Briefing on the motion for a preliminary injunction was extended after Camacho's counsel filed a motion for a preliminary injunction raising similar issues regarding confidential attorney visits at SCI-Huntingdon in a different case—*Lane v. Tavares,* 3:14-CV-00991 (M.D. Pa.)—and Judge Caputo scheduled a hearing on the motion in *Lane*.   In order to ensure consistency while fairly considering this case on the merits, we ordered the defendants to address in their brief in opposition to the motion for a preliminary injunction in this case the evidence presented at the hearing in front of Judge Caputo in the *Lane* case and any ruling that Judge Caputo made in that case.

On February 3, 2015, Judge Caputo denied the motion for a preliminary injunction in the *Lane* case holding that, on the record before him, Lane failed to demonstrate a reasonable probability of success on the merits of his access-to-courts claim or to demonstrate irreparable injury.   Following Judge Caputo's decision in

3

the *Lane* case, Camacho filed a motion to compel the production of videos.[1]   In

connection with that motion, the defendants argued that Judge Caputo's decision in

*Lane* collaterally estopped Camacho from litigating the issue regarding the

conditions for attorney-client visits at SCI-Huntingdon.

At a March 27, 2015 conference with counsel, we rejected the defendants'

collateral-estoppel argument because Camacho was not a party, or in privity with a

party, in the *Lane* case.   After that conference, we also scheduled a hearing on

Camacho's motion for a preliminary injunction.   Further, we granted Camacho's

motion to compel production to the extent that we ordered the defendants to produce

to Camacho's counsel subpoenaed videos of September 14, 2014, October 23, 2014,

and November 10, 2014.   We further granted Camacho's request for the video of

January 17, 2015 to the extent such video exists, and we granted Camacho's request

for his counsel to take photographs of the visiting booths at SCI-Huntingdon.   We

denied the motion to compel production to the extent that it sought sanctions and

costs, and we also denied Camacho's request for video of August 30, 3014.

───────────────────────

[1]  This was Camacho's second motion to compel production.   His first motion for
compel production was denied without prejudice given that the motion for a
preliminary injunction was still pending in the *Lane* case.

On May 22, 2015, we held a status conference with counsel to go over witnesses and to prepare for the upcoming hearing.   At that conference, Camacho's counsel asserted that the defendants had not produced all the videos that the Court had ordered them to produce, and she requested sanctions for spoliation.   We directed counsel to raise the issue by a motion.   On May 25, 2015, two days before the scheduled hearing, Camacho filed a motion titled "Motion in Limine for Findings of Fact and Sanctions" seeking spoliation sanctions.

On May 28 and 29, 2015, we held a hearing on the motion for a preliminary injunction.   Following the hearing, we ordered the parties to file proposed findings of facts and conclusions of law regarding the motion for a preliminary injunction and supplemental briefs regarding the motion in limine.   The parties filed their proposed findings of fact and conclusions of law, and by a separate Report and Recommendation, we recommend that the motion for a preliminary injunction be denied.

Following the hearing, there was also a flurry of other filings by the parties. On May 31, 2015, Camacho's counsel filed a declaration, which the defendants promptly moved to strike.   On June 2, 2015, the defendants filed a letter requesting that the Court hold a conference regarding a motion for sanctions that Camacho

served but, in accordance with the safe-harbor provision of Fed.R.Civ.P. 11(c)(2), had not yet filed with the Court.   We denied the defendants' request for a conference because given the history of the case we concluded that a conference would not be productive.   On June 3, 2015, Camacho filed a letter pointing out errors in the exhibit list from the preliminary injunction hearing.

On June 5, 2015, Camacho's counsel filed a letter asserting that Camacho had written to her after the hearing telling her that, during the hearing, corrections officers remained outside the door to the video room where he and some of the other inmate witnesses had testified, and the video operator had turned up the volume to the television.   Based on this, Camacho's counsel accused defense counsel of lying to her and to the Court.   Camacho's counsel also made accusations of witness intimidation.   By an Order dated June 5, 2015, we informed counsel that we will take no action on a letter, which does not comply with Fed.R.Civ.P. 7(b).

Further, we ordered Camacho's counsel's declaration stricken from the record because the time for the presentation of evidence was at the preliminary injunction hearing.   Later that same day, Camacho's counsel filed a motion for leave to withdraw her appearance, and she attached to that motion the same declaration that the Court had earlier stricken as well as numerous other exhibits.   On June 11, 2015,

6

Camacho's counsel filed a brief in support of her motion for leave to withdraw her appearance.   On July 17, 2015, counsel filed another motion for leave to withdraw.

Camacho also filed a motion for reconsideration of an order addressing his request for a change of address, and a motion for Rule 11 sanctions.

## III.   Motion in Limine for Spoliation Sanctions.

Camacho is seeking spoliation sanctions.   He contends that the defendants failed to produce the following videos: (1) video from the outside visiting room on November 10, 2014; (2) videos from the inside visiting room from cameras 212 and 196 from November 10, 2014; and (3) and video from the outside visiting room on January 17, 2015.   As to the video from the outside visiting room, Camacho contends that it will show that his counsel was delayed (approximately an hour on November 10, 2014 and approximately 40 minutes on January 17, 2015) entry to the inside visiting room purportedly because of the words she used to request a visit, i.e., she requested a confidential contact visit rather than a regular contact visit in the general visiting area or a legal visit in a noncontact, attorney room.   Camacho contends that cameras 212 and 196 in the inside visiting room are high-resolution cameras capable of reading the print on documents, and he requests the court to infer

7

that those cameras were used to do just that during his visit with his counsel on November 10, 2014.   Camacho requests that the Court find that the events described in his counsel's preservation letters regarding the missing videos be presumed true for purposes of resolving his preliminary-injunction motion. Camacho also requests that the defendants show cause why they should not be held in contempt and why they should not be required to compensate him for the expenses he incurred because of their misconduct.

On May 27, 2015, the defendants filed a brief in opposition to Camacho's spoliation motion.   At the beginning of the hearing, we informed counsel that we needed evidence to decide the motion for spoliation sanctions, and Camacho's counsel informed the court that she would present such evidence at the hearing. Following, the hearing we ordered the parties to file supplemental briefs regarding the motion, and the parties did so on July 1, 2015.

Evidentiary rulings, including rulings regarding whether a spoliation inference is appropriate, rest in the sound discretion of the court. *See Ward v. Lamanna*, 334 F. App'x 487, 492 (3d Cir. 2009)("We review the District Court's denial of an evidentiary inference based on spoliation of evidence for abuse of discretion.").   That discretion is guided, however, by settled legal tenets, tenets that

define both the fundamental nature of spoliation and the appropriate sanctions for

acts of spoliation.   "Generally, spoliation refers to situations where a party has

altered, destroyed, or failed to produce evidence 'relevant to an issue in a case.'"

*Omogbehin v. Cino*, 485 F. App'x 606, 610 (3d Cir. 2012) (quoting *Bull v. United*

*Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).   "Spoliation occurs where: the

evidence was in the party's control; the evidence is relevant to the claims or defenses

in the case; there has been actual suppression or withholding of evidence; and, the

duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665

F.3d at 73.   To establish the actual suppression or withholding of evidence, the

party seeking spoliation sanctions must prove a culpable state of mind:

> For the [spoliation] rule to apply . . . it must appear that
> there has been an actual suppression or withholding of the
> evidence.   *No unfavorable inference arises when the*
> *circumstances indicate that the document or article in question*
> *has been lost or accidentally destroyed, or where the failure to*
> *produce it is otherwise properly accounted for.   See generally*
> 31A C.J,S Evidence § 156(2); 29 Am.Jur.2d Evidence § 177
> ("Such a presumption or inference arises, however, only when
> the spoliation or destruction [of evidence] was intentional, and
> indicates fraud and a desire to suppress the truth, and it does not
> arise where the destruction was a matter of routine with no
> fraudulent intent."). *Brewer,* 72 F.3d at 334 (emphasis added).
> Therefore, a finding of bad faith is pivotal to a spoliation
> determination.   This only makes sense, since spoliation of
> documents that are merely withheld, but not destroyed, requires

9

> evidence that the documents are actually withheld, rather
> than—for instance—misplaced.    Withholding requires intent.

*Bull*, 665 F.3d at 79 (emphasis in original).    If the Court finds that there is a

culpable destruction or spoliation of evidence, the question then becomes whether,

and what, sanctions are appropriate.    That analysis requires consideration of a

number of considerations:

> The considerations are: 1) the degree of fault of the party
> who altered or destroyed the evidence; 2) the degree of
> prejudice suffered by the opposing party; and 3) whether there
> is a lesser sanction that will avoid substantial unfairness to the
> opposing party and, where the offending party is seriously at
> fault, will serve to deter such conduct by others in the future. *Id.*
> When appropriate, a court may impose any potential sanction
> including: 1) dismissal of a claim or granting judgment in favor
> of a prejudiced party; 2) suppression of evidence; 3) an adverse
> inference, referred to as the spoliation inference; 4) fines; and
> 5) attorneys' fees and costs.

*Ogin v. Ahmed*, 563 F. Supp. 2d 539, 545 (M.D. Pa. 2008)(footnote omitted).    The

party seeking spoliation sanctions bears the burden of proving his or her entitlement

to such. *Sanders v. Beard*, No. 3:09-CV-1384, 2012 WL 2018269, at *2 (M.D. Pa.

June 5, 2012).

   We begin with the video from the inside visiting room on November 10, 2014.

Although the defendants produced video from cameras 126, 127, 128, 130 and 179

from the inside visiting room for the relevant time, they did not produce videos from

10

cameras 212 and 196.   The defendants submitted a declaration from Marcus Chappell, the corrections officer tasked with reviewing, preserving, and producing video requested by Camacho's counsel. *Doc. 88-2* at ¶¶1-3.   Chappell states that no video was preserved from camera 212 because his "review of the video captured on that day indicates that the particular area of the visiting room covered by camera 212 was also being covered by cameras 126 and 130 at the time." *Id.* at ¶15.   While the defendants contend that the footage from camera 212 was unnecessary and redundant because that angle was covered by other cameras, it is the Court, not prison officials or defense counsel, that ultimately determines what is relevant, necessary, or redundant.   A party cannot withhold evidence that the Court ordered produced simply because it deems it irrelevant or cumulative.   Further, as to camera 196, the defendants incorrectly assert that footage from that camera is irrelevant because Camacho asserts that the incident occurred in the outside visiting room, and camera 196 covers the inside visiting room.   Camacho, however, sought footage from both the outside visiting room and the inside visiting room for November 10, 2014.   Thus, footage from camera 196 is relevant, and the defendants have not provided any reasonable excuse for why they did not produce it.

11

While the defendants were not justified in withholding video from cameras 212 and 196 from November 10, 2014, we nevertheless conclude that sanctions are not warranted.   On November 10, 2014, Camacho met with his counsel in the general visiting room.   As noted in the separate Report and Recommendation, we have determined that the general visiting room is not a place where confidential attorney-client visits can appropriately take place.   An adverse inference, therefore, would not help Camacho, and given that the withholding of this video has not prejudiced Camacho, other sanctions are not appropriate.

With respect to the video from the outside visiting room on November 10, 2014, Chappelle asserts that camera 180, which apparently covers the outside visiting room, was not in use that day.   That no video exists is certainly a valid reason for not producing any video.   Camacho has not presented evidence that Camera 180 or any other cameras were in use on that date in the outside visiting room.[2]   Thus, he has not shown the required elements for spoliation.

_____

[2]   Camacho states in his brief that there are two cameras in the outside visiting room covering the room from opposite angles.   He also states that "[v]ideo from those cameras for November 10, 2014, was produced to plaintiff in a truncated or defective form that prevented reproduction of still shots to display as slides at the hearing." *Doc. 90* at 4.   Camacho also asserts that defense counsel conceded that

With respect to the video from the outside visiting room on January 17, 2015, the defendants assert that no video of the outside visiting room was preserved because the preservation request recounted a confrontation that occurred at the officer's desk, which is not covered by any security cameras.   Although Camacho recounted in his preservation letter what he thought the cameras would show, he also requested preservation of "video of the outside visiting room for Saturday, January 17, 2015, from 11:05 a.m. to 11:50 a.m." *Doc. 54-1* at 1.   Thus, if there is video from cameras in the outside visiting room on that date, the defendants should have produced them notwithstanding their contention that the video would not show what Camacho's counsel asserted it would.   Still, Camacho has not produced evidence that any video cameras were in use in the outside visiting room on the date and time in question.   Thus, he has not shown the required elements for spoliation.

---

the "preservation letters specified video from those cameras on those date, but surmised that the January 17 video was not preserved and the November 10 video could not be restored to a viable format." *Id.*   Camacho has not, however, pointed to record evidence to support those assertions.   We note that at the hearing, Camacho did present several photos of the outside visiting room. *See Exhibit 22*.   But there is no basis to infer that those photos were still shots from video taken on November 10, 2014.

13

In light of the foregoing, we will deny the motion in limine for spoliation sanctions.[3]

## IV.  Second Motion for Sanctions.

On June 25, 2015, Camacho filed a motion titled "Second Motion for Sanctions" seeking sanctions against the defendants pursuant to Fed.R.Civ.P. 11. In his motion, Camacho asserts that the defendants made 48 misrepresentations of fact or law in numerous documents.   On July 9, 2015, Camacho filed a brief in support of his motion for sanctions briefing only a small subset of the alleged misrepresentations presented in his motion.[4]   The defendants filed a brief in opposition, and Camacho filed a reply brief.   After considering Camacho's motion and the parties' briefs, we conclude that sanctions are not warranted.[5]

---

[3]   Even were we to grant the motion to the extent that we took the representations of the events at issue in Camacho's preservation letters as true, that would not change our recommendation that the motion for a preliminary injunction should be denied.
[4]  We address only the purported bases for sanctions briefed by Camacho.
[5]   Local Rule 7.8(a) provides that if the brief of the opposing party does not contain a counter statement of facts or questions involved, "the statements of the moving party will be deemed adopted."   We reject Camacho's suggestion that the Court adopt his statement of facts, which consists of his listing of alleged instances of misrepresentations that are the purported bases for his motion for sanctions, and

Camacho is seeking sanctions pursuant to Fed.R.Civ.P. 11, which provides in pertinent part:

> **(b) Representations to the Court.**   By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, or other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"Rule 11 sanctions should not be viewed as a general fee shifting device."

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482-83 (3d Cir. 1987).   Rather, the purpose

---

grant his motion because the defendants failed to file a counterstatement of facts given that the defendants addressed those instances of alleged misrepresentations, albeit in the argument-section of their brief.

15

of such sanctions is the "correction of litigation abuse." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010). "Sanctions are to be applied only 'in the "exceptional circumstance" where a claim or motion is patently unmeritorious or frivolous.'" *Id.* (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). In evaluating a Rule 11 motion for sanctions, a court must determine whether the attorney's conduct was objectively reasonable under the circumstances. *Id.* Bad faith is not required. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). But Rule 11 "'must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute,' and it 'should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.'" *Ario*, 618 F.3d at 297 (quoting *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 94 (3d Cir.1988)). Further, "Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b)." Advisory Committee Notes to Rule 11 (1993Amendments).

Camacho seeks sanctions based on a joint letter that she signed along with defense counsel. After stating that the parties met and explored amicable resolution of the issues underlying the motion for a preliminary injunction, that letter provides:

16

Subsequently, counsel for Defendants was notified that DOC officials and the administration of SCI-Huntingdon were willing to make an improvement to an attorney visitation booth to accommodate the document sharing requested by Plaintiff and his counsel.   The particulars of how to fabricate such an accommodation are currently being researched by maintenance staff.   We anticipate that the finished product will be available for inspection within two weeks.

*Doc. 44* at 1.   Because the dimensions of the aperture for sharing documents that SCI-Huntingdon later installed did not meet Camacho's expectations, he contends that the defendants misled him and the Court.   While Camacho may have been disappointed in the actual aperture, we find no basis to impose sanctions based on statements in a joint letter from counsel regarding possible settlement accommodations.[6]

Similarly, sanctions are not warranted based on statements in a letter from defense counsel dated May 12, 2015 reporting on the document aperture recently installed at SCI-Huntingdon.   In that letter, defense counsel states that the aperture is "approximately one half-inch tall," *doc. 48* at 1, but Camacho points to an exhibit that shows that the slot is approximately 3/8th of an inch tall.   Defense counsel,

---

[6]   Statements made during settlement negotiations are generally not admissible, *see* F.R.E. 408, and are meant to be confidential.

however, only provided an approximate height in the letter.   Moreover, the

difference in this context between 1/2 and 3/8th of an inch is negligible and certainly

not a basis for sanctions.   Likewise, that Camacho's counsel disagrees with other

statements in the letter or with defense counsel's characterizations about the relief

Camacho is seeking does not make those statements sanctionable.

Camacho also seeks sanctions based on the defendants' assertion in

opposition to Camacho's motions to compel production of subpoenaed video that

they filed objections to a subpoena served on a nonparty in accordance with

Fed.R.Civ.P. 45.[7]   As the defendants did serve objections, *see doc. 24-4*, it appears

that Camacho's contention is that instead of objections the defendants should have

moved to quash the subpoena. *See Docs. 91 & 25.*   As noted below, the Advisory

Committee notes to Rule 45 contemplate that the purpose of the notice provision is

---

[7] Fed.R.Civ.P. 45(a)(4) provides that before serving a subpoena for, among other things, documents and electronically stored information on the person to whom it is directed, the party serving the subpoena must provide notice and a copy of the subpoena to each party.   The purpose of the notice provision is to enable "the other parties to object or to serve a subpoena for additional materials." Advisory Committee Notes to Rule 45 (2013 Amendments).   To the extent that the defendants asserted (*see doc. 24* at 2) that their objections were made pursuant to Fed.R.Civ.P. 45(c)(2)(B), which provides that a subpoena may command "inspection of premises at the premises to be inspected," rather than 45(a)(4), such a misstatement is minor and not sanctionable.

to allow a party to object to a subpoena. But neither Rule 45 nor the notes make clear how those objections should be made. While Camacho suggests that the defendants should have filed a motion to quash, generally, unless a privilege or privacy right of the party is at stake, a party does not have standing to move to quash a subpoena to a nonparty. *Carpenter v. Kloptoski*, No. CIV.A 1:08-CV-2233, 2010 WL 126173, at *1 (M.D. Pa. Jan. 8, 2010)("While a motion to quash or modify a subpoena, in general, must be brought by the individual to whom it was directed, there is an exception that provides a party standing when he or she seeks to quash or modify the non-party subpoena on the basis of a privilege or privacy interest in the subpoenaed information."). In addition to objections, the defendants could have filed a motion for a protective order. *See Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013). But the defendants were not required to do so. In any event, Camacho filed motions to compel and the Court decided those motions. Neither the Court nor Camacho were misled by the defendants' statements. Thus, the defendants' statements in their briefs in opposition to Camacho's motions to compel do not warrant sanctions.

Camacho also seeks sanctions based on the defendants' assertion that Judge Caputo's decision in *Lane* collaterally estopped Camacho from litigating the issue

19

regarding the conditions for attorney-client visits at SCI-Huntingdon.   Although we rejected that collateral-estoppel argument because Camacho was not a party, or in privity with a party, in the *Lane* case, the assertion of collateral estoppel was within the bounds of reasonable advocacy and is not sanctionable.   This is particularly so given that the Court had suggested to the parties that the evidence in the *Lane* case and Judge Caputo's ruling may be relevant to this case.

Camacho is also seeking sanctions based on the defendants' argument in support of their motion to strike an affidavit that his counsel filed after the preliminary injunction hearing.   We granted the defendants' motion to strike and ordered the declaration, which contained factual assertions regarding issues relevant to the motion for a preliminary injunction, stricken from the record because the time for the presentation of evidence was at the preliminary injunction hearing.   We reject Camacho's suggestion that the Court lacked the authority to strike the declaration, and we will not sanction the defendants for arguing that the Court should strike the declaration.

Finally, and most problematic, is Camacho's request for sanctions based on statements Connie Green made in a declaration.   Based on a discussion at a conference on May 22, 2015 with the court and counsel, the defendants filed a

20

motion to withdraw the declaration of Connie Green, which they had filed as an

exhibit in opposition to the motion for a preliminary injunction.   In accordance with

the discussion at the conference, on May 26, 2015, we granted that motion, deemed

the declaration of Connie Green withdrawn, and ordered that Green need not appear

at the hearing.   Thus, the declaration was withdrawn nearly a month before

Camacho filed his motions for sanctions.   To grant sanctions under these

circumstances would not be in accord with the purpose or spirit of Rule 11, and

specifically the safe-harbor provision of Rule 11(c)(2).

In sum, while Camacho disagrees with many of the assertions and arguments

presented by the defendants, the defendants have not abused the litigation system,

and sanctions are not warranted.   Thus, we will deny Camacho's second motion for

sanctions.


## V.   Motion for Reconsideration.

On June 15, 2015, Camacho filed a letter regarding a change of address.

Camacho stated that his counsel filed a motion to withdraw her appearance and that,

when that motion is granted, he will be proceeding *pro se*.   He requested that after

his lawyer withdraws, papers should be served on him at the following address:

ABOGADA DE PRESOS
P.O. Box 404
Huntingdon, PA 16652

By an Order dated June 17, 2015, we denied Camacho's request for a change

of address because we had not yet made a decision on counsel's motion to withdraw,

because of concerns that Camacho could be prejudiced by not receiving documents

sent to him at a place where he does not currently reside, and because "he provides

the address of a third party, who may not be responsible to the Court." *Doc. 81* at 2.

With respect to the latter concern, we stated that it appeared that the address

Camacho provided is associated with his counsel.   In that regard, we noted:

> To the extent that this is so, it raises the question whether
> counsel intended to ghostwrite documents for Camacho even
> were the Court to grant her leave to withdraw, and that raises
> profound ethical issues.   Although some jurisdictions permit
> ghostwriting, the federal courts generally do not. *See* Ira P.
> Robbins, *Ghostwriting: Filling in the Gaps of Pro Se Prisoners'*
> *Access to the Courts*, 23 Geo. J. Legal Ethics 271, 285
> (2010)(arguing in favor of allowing ghostwriting but noting that
> "[t]he federal courts have almost universally condemned
> ghostwriting").   While "the rules of ethics in this area are
> evolving," *Ely v. Cabot Oil & Gas Corp.,* 3:09-Cv-2284, slip
> order at *6 (M.D. Pa. July 21, 2014), the propriety of
> ghostwriting remains an open issue in this Court.   To the extent
> Camacho's counsel intended to go down this road by having Mr.
> Camacho change his address, we consider her forewarned and

22

> suggest that she consult bar ethics counsel for guidance on this
> unfavored practice.

*Id.* at 2, n.2.

The next day, Camacho file a motion for reconsideration of that order and a brief in support of that motion.   Counsel asserts that, in fact, the new address provided by Camacho is a post office box that she rented, and she suggests that even if granted leave to withdraw, she intends to pick up and read the mail served on Camacho and to assist Camacho "as much as she can by continuing to explain procedures, draft papers, explore options, and offer personal encouragement." *Doc. 83* at 4.   Counsel asserts that the Order of June 17, 2015 should be vacated and reissued without pejorative innuendo and veiled threats against her.

As "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence," *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), "[t]he scope of a motion for reconsideration. . . is extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).   "A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591

F.3d 666, 669 (3d Cir. 2010).   Mere disagreement with the court, however, does not translate into a clear error of law or fact. *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F.Supp. 595, 611 (M.D. Pa. 1996).   "A motion for reconsideration is not a tool to relitigate and reargue issues which have already been considered and disposed of by the court." *Id*.   "Nor is it to be used to put forth additional arguments which could have been made but which the party neglected to make before judgment." *Waye v. First Citizen's Nat'l Bank*, 846 F.Supp. 310, 314 (M.D. Pa. 1994), *aff'd*, 31 F.3d 1175 (3d Cir. 1994).   In the interest of finality, courts should grant motions for reconsideration sparingly.   *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D.Pa. 1992).

Here, Camacho has not shown a reason to vacate the order regarding Camacho's change of address.   She has not shown an intervening change in controlling law, the availability of new evidence, or the need to correct clear error of law or prevent manifest injustice.   The order merely addressed a minor issue regarding the address of a party, and Camacho does not even seek a different order substantively.   Counsel for Camacho merely objects to the footnote in the order regarding ghostwriting.   Rather than construe that footnote in the spirit intended, i.e., to give counsel a heads up as to potential pitfalls of a course it appeared she may

24

have been contemplating, counsel apparently took it as a personal attack on her.

But contrary to counsel's suggestion, the Order contains no pejorative innuendo or

veiled threats against her.   Camacho has not shown that he is entitled to

reconsideration of the order, and his motion for such will be denied.


### VI.   Motions to Withdrawn Appearance.

Finally, we address the motions for leave to withdraw as counsel filed by

counsel for Camacho.

Counsel asserts that she cannot ethically represent Camacho because of her

purported inability to communicate confidentially with him.   She also asserts that

she took this case on a contingency-fee basis and that if the Court does not allow her

to withdraw, she will experience a hardship that will hinder her ability to represent

her other clients effectively.   In this regard, she asserts that even if a preliminary

injunction is issued, she lacks the resources to return to Court to enforce the

injunction if the defendants ignore it.   Counsel also states that employees at

SCI-Huntingdon dislike her and that Camacho is being harassed because of his

association with her.

The motions to withdraw present the Court with a difficult dilemma.   We would normally grant a motion to withdraw where an attorney asserts that he can no longer ethically represent a client.   But here the primary basis for the motions is that counsel cannot communicate confidentially with her client.   As set forth in the accompanying Report and Recommendation, we find that just is not so. Accordingly, we will not grant the motions to withdraw on the basis that counsel cannot confer confidentially with her client.

Counsel also asserts that she can no longer afford to represent Camacho, but here again she ties that assertion to the issues surrounding the motion for preliminary injunction, and she asserts that even if the Court issues a preliminary injunction, she lacks the resources to return to Court to enforce the injunction if the defendants ignore it.   Given our recommendation that the Court deny the motion for a preliminary injunction, any financial hardship in enforcing a preliminary injunction is speculative.   Further, counsel took this case on a contingency fee basis, so the fact that she is incurring expenses that she might not be able to recoup should not be a surprise to her, and granting her leave to withdraw may prejudice Camacho.

We also do not find that counsel should be granted leave to withdraw based on her vague assertion that Camacho is being harassed because of her.[8]  And that prison employees do not like counsel is hardly a basis for withdrawal.

## VII.   Order.

**IT IS ORDERED** that Camacho's motion (doc. 54) in limine for spoliation sanctions, his second motion (doc. 86) for sanctions, his motion (doc. 82) for reconsideration of the order of June 17, 2015, and his counsel's motions (docs. 75 & 100) for leave to withdraw are **DENIED.**

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge

---

[8]   Counsel attached an email to opposing counsel complaining that security officers at SCI-Huntingdon tried to interrogate Camacho about the conditions of the May 28th hearing after he filed a grievance about the hearing. *See Doc. 100-1* at 1.

27